UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
NCHEWI AKPOKE and D.C., a minor,                         :
                                                         :
                      Plaintiffs,                        :
                                                         :   COMPLAINT
             -against-                                   :
                                                         :
CITY OF NEW YORK, NYPD OFFICER                           :
ROBERT HESTERHAGEN, and JOHN/JANE                        :   Jury Trial Demanded
DOE POLICE OFFICER,                                      :
                                                         :
                      Defendants.                        :
-------------------------------------------------------- x

This is an action to recover money damages arising out of the violation of Plaintiff Nchewi Akpoke's and Plaintiff D.C.'s (Plaintiff D.C. was a minor at the time of this incident and remains a minor at this writing) rights under the Fourth and Fourteenth Amendments of the United States Constitution.

## JURISDICTION AND VENUE

1. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.

2. The Court's jurisdiction is predicated upon 28 U.S.C. §§ 1331, 1343.

3. Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b) as Plaintiffs reside in the District and the claim arose in the District.

## JURY DEMAND

4. Mr. Akpoke and D.C. respectfully demand a trial by jury of all issues in the matter pursuant to Federal Rule of Civil Procedure ("FRCP") 38.

## PARTIES

5. Mr. Akpoke and D.C. is a citizen of the City of New York in Richmond County in the State of New York.

6. Defendant City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

7. Defendant CITY OF NEW YORK maintains the New York City Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, the City of New York.

8. That at all times hereinafter mentioned, Defendant Police Officer Robert Hesterhagen and Defendant John/Jane Doe Police Officer 1 were duly sworn police officers of the NYPD and were acting under the supervision of said department and according to their official duties.

9. That at all times hereinafter mentioned the Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

10. Each and all of the acts of the Individual Defendants alleged herein were committed by said Defendants while acting within the scope of their employment by Defendant City of New York.

## FACTS

11. On or about July 26, 2015, Mr. Akpoke, D.C. and Mr. Akpoke's friend Prince were in a vehicle driven by Mr. Akpoke in the 121st Precinct of Richmond County.

12. A police car turned on its red and blue flashing lights indicating that Mr. Akpoke should pull the vehicle over.

13. Mr. Akpoke pulled over.

14. Defendant Officer Hesterhagen approached Mr. Akpoke while Defendant John Doe Police Officer approached the passenger side of the vehicle.

15. When Mr. Akpoke asked Defendant Officer Hesterhagen the justification for the stop, as Mr. Akpoke had not violated any vehicle or traffic law, Defendant Officer Hesterhagen stated that he only "wanted to investigate."

16. Mr. Akpoke had garden tools in the vehicle, as he occasionally performs work as a landscaper and/or gardener in the summer months.

17. It was lawful for Mr. Akpoke to have the garden tools.

18. On seeing the garden tools, Defendant Officer Hesterhagen ordered Mr. Akpoke out of the vehicle.

19. Before Defendant Officer Hesterhagen finished telling Mr. Akpoke to get out of the vehicle, and before Mr. Akpoke had an opportunity to comply, Defendant Officer Hesterhagen began to remove Mr. Akpoke with force.

20. Defendant Officer Hesterhagen swung open the vehicle door.

21. Defendant Officer Hesterhagen lunged forward and grabbed Mr. Akpoke roughly by his shirt.

22. Defendant Officer Hesterhagen violently yanked Mr. Akpoke up out of his seat.

23. Mr. Akpoke and the other occupants of the vehicle had given Individual Defendants no justification to use any force in their interaction. At all times during the unreasonable stop, including the moment when Defendant Officer Hesterhagen ordered Mr. Akpoke out of the vehicle, Mr. Akpoke and all occupants of the vehicle had complied with all of Defendant Officer Hesterhagen's directives and answered all of Defendant Officer Hesterhagen's questions.

24. Defendant Officer Hesterhagen yanked Mr. Akpoke from the vehicle with such force, and so suddenly, Mr. Akpoke's head fell backward then forward in a whiplash-like motion and struck the vehicle at great speed and with great force.

25. The impact of Mr. Akpoke's head striking the vehicle caused a laceration on Mr. Akpoke's forehead which later evolved into a large swelling the shape and size of an egg.

26. Defendant Officer Hesterhagen's use of force in dragging Mr. Akpoke from the vehicle was, in light of Mr. Akpoke's total compliance during the police stop, excessive and in violation of Mr. Akpoke's constitutional rights.

27. Individual Defendants arrested Mr. Akpoke.

28. Despite his belief that the tools in his vehicle and on his person were lawful, Mr. Akpoke pleaded guilty to possession of a Weapon in the 4th Degree.

29. D.C., who was not arrested, was unlawfully seized for the duration of the unjustified stop.

30. All of the above—in particular the unreasonable stop of Plaintiffs' vehicle and unreasonable detention of Plaintiffs—occurred as a direct result of the unconstitutional policies, customs or practices of the City of New York, including, without limitation, the inadequate screening, hiring, retaining, training and supervising of its employees, and due to a custom, policy and/or practice of: detaining innocent persons without cause in order to meet "productivity goals," or arrest quotas; detaining individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in falsely arresting those individuals.

31. The aforesaid incident is not an isolated incident. The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar

wrongful conduct as documented in civil rights actions filed in the United States District Courts in the Eastern and Southern Districts of New York as well as in New York State courts. As a result, Defendant City of New York is aware (from said lawsuits as well as notices of claims and complaints filed with the NYPD's Internal Affairs Bureau and the CCRB) that many NYPD officers, including the Individual Defendants, arrest individual persons in order to meet productivity goals and arrest quotas; arrest individuals for professional advancement, overtime compensation and/or other objectives outside the ends of justice; and/or falsely arrest individuals and engage in a practice of falsification of evidence in an attempt to justify the false arrest.

32. The Honorable Jack B. Weinstein, United States District Judge for the Eastern District of New York, has written that

> [i]nformal inquiry by the [C]ourt and among judges of this [C]ourt, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the [NYPD] . . . [T]here is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the [C]ity approving illegal conduct of the kind now charged.

Colon v. City of N.Y., No. 09 Civ. 8, No. 09 Civ. 9 (JBW), 2009 WL 4263363, at *2 (E.D.N.Y. Nov. 25, 2009).

33. Former Deputy Commissioner Paul J. Browne, as reported in the press on January 20, 2006, stated that NYPD commanders are permitted to set "productivity goals," permitting an inference of such a custom or policy encouraging deprivations of individuals' constitutional rights in cases such as this one.

34. Defendant City of New York is thus aware that its improper training and customs and policies have often resulted in a deprivation of individuals' constitutional rights. Despite such notice, Defendant City of New York has failed to take corrective action. This failure caused Individual Defendants in this case to violate Plaintiffs' constitutional rights.

5

35. Moreover, on information and belief, Defendant City of New York was aware, prior to the incident, that the Individual Defendants lacked the objectivity, temperament, maturity, discretion and disposition to be employed as police officers. Despite such notice, Defendant City of New York has retained these officers, and failed to adequately train and supervise them.

36. All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under color of state law.

37. All of the aforementioned acts deprived Plaintiffs of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the United States Constitution, and in violation of 42 U.S.C. § 1983.

38. The acts complained of were carried out by the aforementioned Individual Defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

39. The acts complained of were carried out by the aforementioned Individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures and the rules of the Defendant City of New York and the NYPD, all under the supervision of ranking officers of said department.

40. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

41. As a result of the foregoing, Plaintiffs are entitled to compensatory and punitive damages in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## FIRST CLAIM
## 42 U.S.C. § 1983

42. Plaintiffs repeats and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

43. Defendants, by their conduct toward Plaintiffs alleged herein, violated Plaintiffs' rights guaranteed by 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the Constitution of the United States.

44. Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly with malice and with the specific intent to deprive Plaintiffs of their constitutional rights.

45. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## SECOND CLAIM
## FALSE ARREST

46. D.C. repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

47. Defendants violated the Fourth and Fourteenth Amendments because they arrested and/or detained D.C. without reasonable suspicion or probable cause.

48. Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive D.C. of his constitutional rights.

49. As a direct and proximate result of Defendants' unlawful conduct, D.C. sustained the damages hereinbefore alleged.

## THIRD CLAIM
## EXCESSIVE FORCE

50. Mr. Akpoke repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

51. The level of force employed by Defendant Officer Hesterhagen was excessive, objectively unreasonable and otherwise in violation of Mr. Akpoke's Fourth Amendment and Fourteenth Amendment rights.

52. As a direct and proximate result of Defendants' unlawful conduct, Mr. Akpoke was subjected to excessive force and sustained the injuries hereinbefore alleged.

## FOURTH CLAIM
## FAILURE TO INTERVENE

53. Mr. Akpoke and D.C. repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

54. The Individual Defendants actively participated in the aforementioned unlawful conduct and observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

55. Accordingly, the Individual Defendants who failed to intervene violated the Fourth and Fourteenth Amendments of the United States Constitution.

56. Individual Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs of their constitutional rights.

57. As a direct and proximate result of Defendants' unlawful conduct, Mr. Akpoke and D.C. sustained the damages hereinbefore alleged.

## FIFTH CLAIM
## MONELL

58. Mr. Akpoke and D.C. repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

59. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

60. The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York and the NYPD included, but were not limited to, the inadequate screening, hiring, retaining, training and supervising of its employees that was the moving force behind the violation of Mr. Akpoke's and D.C.'s rights as described herein. As a result of the failure of the Defendant City of New York to properly recruit, screen, train, discipline and supervise its officers, including the Individual Defendants, Defendant City of New York has tacitly authorized, ratified and has been deliberately indifferent to, the acts and conduct complained of herein.

61. The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York and the NYPD included, but were not limited to: arresting innocent persons in order to meet "productivity goals," or arrest quotas; arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in falsely arresting, unlawfully stopping and maliciously prosecuting those individuals.

62. The foregoing customs, policies, usages, practices, procedures and rules of the Defendant City of New York and the NYPD constituted deliberate indifference to Mr. Akpoke's and D.C.'s safety, well-being and constitutional rights.

63. The foregoing customs, polices, usages, practices, procedures and rules of Defendant City of New York and the NYPD were the direct and proximate cause of the constitutional violations suffered by Mr. Akpoke and D.C. as described herein.

**PRAYER FOR RELIEF WHEREFORE**, Mr. Akpoke and D.C. respectfully request the following relief:

A. An order entering judgment for Mr. Akpoke and D.C. against Defendants on each of their claims for relief;

B. Awards to Mr. Akpoke and D.C. for compensatory damages against all Defendants, jointly and severally, for their violation of Mr. Akpoke's and D.C.'s Fourth and Fourteenth Amendment rights, the amount to be determined at jury trial, which Mr. Akpoke and D.C. respectfully demand pursuant to FRCP 38;

C. Awards to Mr. Akpoke and D.C. of punitive damages against Defendants on the basis of their conscious wrongdoing and callous indifference to Mr. Akpoke's and D.C.'s constitutional rights and welfare, the amount to be determined at jury trial, which Mr. Akpoke and D.C. respectfully demand pursuant to FRCP 38;

D. Awards to Mr. Akpoke and D.C. of the costs of this action, including reasonable attorneys' fees;

E. Such further relief as this Court deems just and proper.

DATED:   December 7, 2015
         New York, New York

/s
Ryan Lozar (RL0229)
305 Broadway, 9th Floor
New York, New York 10007
(310) 867-1562

*Attorney for Plaintiff*