UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
NCHEWI AKPOKE,                                            :
                                                         :
                        Plaintiffs,                      :
                                                         :     FIRST AMENDED COMPLAINT
            -against-                                    :     15 Civ. 6960 (ILG) (CLP)
                                                         :
CITY OF NEW YORK, NYPD OFFICER                           :
ROBERT HESTERHAGEN, Shield No. 7727,                     :
NYPD OFFICER DANIEL GOLAT, Shield No.                    :     Jury Trial Demanded
9913, NYPD SERGEANT MICHAEL                              :
DICECCO, Tax # 903799,                                   :
                                                         :
                        Defendants.                      :
------------------------------------------------------------ x

This is an action to recover money damages arising out of the violation of Plaintiff

Nchewi Akpoke's rights under the Fourth and Fourteenth Amendments of the United States

Constitution.

## JURISDICTION AND VENUE

1.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth

and Fourteenth Amendments to the United States Constitution.

2.      The Court's jurisdiction is predicated upon 28 U.S.C. §§ 1331, 1343.

3.      Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b) as

Plaintiffs reside in the District and the claim arose in the District.

## JURY DEMAND

4.      Mr. Akpoke respectfully demands a trial by jury of all issues in the matter

pursuant to Federal Rule of Civil Procedure ("FRCP") 38.

## PARTIES

5.      Mr. Akpoke is a citizen of the City of New York in Richmond County in the State

of New York.

6.      Defendant City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

7.      Defendant CITY OF NEW YORK maintains the New York City Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, the City of New York.

8.      That at all times hereinafter mentioned, Defendant Hesterhagen, Defendant Golat, and Defendant Dicecco were duly sworn police officers of the NYPD and were acting under the supervision of said department and according to their official duties.

9.      That at all times hereinafter mentioned the Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

10.     Each and all of the acts of the Individual Defendants alleged herein were committed by said Defendants while acting within the scope of their employment by Defendant City of New York.

## FACTS

11.     On or about July 26, 2015, Mr. Akpoke and two friends were in a vehicle driven by Mr. Akpoke in the 121st Precinct of Richmond County.  The friends' names were Prince Harris and D.C., a minor.

12.     A police car turned on its red and blue flashing lights indicating that Mr. Akpoke should pull the vehicle over.  On information and belief, Defendant Hesterhagen and Defendant Golat were in this vehicle and got out.

13.     Mr. Akpoke pulled over.

14.     A second police car arrived moments later.  On information and belief, Defendant Dicecco was in this vehicle and got out at roughly the same time that Defendant Hesterhagen and Defendant Golat exited their vehicle.

15.     On information and belief, between the two police cars there were four police officers on the scene during the incident in question: Defendant Hesterhagen, Defendant Golat, Defendant Dicecco and another officer.

16.     On information and belief, Defendant Hesterhagen approached Mr. Akpoke's side of the vehicle and Defendant Golat approached the other side of the vehicle.  Defendant Dicecco, who was the supervisor on the scene, was on the scene and near Defendant Hesterhagen and Defendant Golat at the time of the incident.

17.     Mr. Akpoke believes that Defendant Hesterhagen was the Individual Defendant who approached his window because Defendant Hesterhagen later made false allegations about Mr. Akpoke, but discovery may clarify the positions and roles of the Individual Defendants as described in Paragraph 16 above.  Regardless of which Individual Defendant actually interacted directly with Mr. Akpoke at the moment of the incident, the other two Individual Defendants (Golat and Dicecco, presuming Hesterhagen was the Defendant who interacted with Mr. Akpoke) were present when the incident occurred; failed to intervene to prevent the unconstitutional stop of the vehicle, which Hesterhagen falsely claimed occurred because the vehicle was parked in the middle of the road; failed to intervene to prevent the unconstitutional use of force against Mr. Akpoke; and failed to intervene to correct Defendant Hesterhagen's subsequent fabrication of evidence on the government paperwork documenting the incident. That fabrication of evidence relates, inter alia, to the location of the various alleged weapons inside the vehicle.

3

18.     When Mr. Akpoke asked Defendant Hesterhagen the justification for the stop, as Mr. Akpoke had not violated any vehicle or traffic law, Defendant Officer Hesterhagen stated that Defendants had stopped Mr. Akpoke because they only "wanted to investigate."  Later, Defendant Officer Hesterhagen falsely stated that the reason for the stop was that Mr. Akpoke's vehicle was parked in the middle of the road.  This was not true.   Other Individual Defendants failed to intervene to correct the fabricated "justification" for the stop.

19.     Mr. Akpoke had tools in the vehicle, as he occasionally performs landscaping/gardening work.

20.     On seeing a machete-like tool lying on the floor of the vehicle (Defendants' paperwork documenting the arrest admits that the tool was simply lying there), Defendant Officer Hesterhagen ordered Mr. Akpoke out of the vehicle.

21.     It was lawful for Mr. Akpoke to have the machete-like tool.  See, e.g. People v. Campos, 93 A.D.3d 581, 581 (2d Dep't 2012) (citing to New York Penal Law 263.01, stating that "[p]ossession of a machete is only criminal when the possessor intends to use it unlawfully against another," and noting that "[a] knife, such as a machete, that has nonviolent uses 'may . . . be determined to fall within the statutory prescription when the circumstances of its possession including the behavior of its possessor demonstrate that the possessor himself considered it a weapon"); People v. Humphrey, 20 Misc.3d 206, 208 (Queens Cty. Criminal Ct. 2008) (stating that the defendant did not criminally possess a knife with a more-than-four-inch blade in a public place after a traffic stop because the vehicle's interior did not become "open to public view" during the course of the officer's investigation) (citing People v. Finch, 19 Misc.3d 840 (Nassau Cnty Dist. Ct. 2008)).  All Individual Defendants knew this yet failed to intervene to stop an unlawful search of the vehicle and its occupants incident to the unlawful stop of the vehicle.

4

22.     Before Defendant Hesterhagen finished telling Mr. Akpoke to get out of the vehicle, and before Mr. Akpoke had an opportunity to comply, and without any of the occupants of the vehicle giving him justification to use force against Mr. Akpoke, Defendant Hesterhagen used excessive force against Mr. Akpoke, causing Mr. Akpoke physical injury.

23.     Defendant Hesterhagen swung open the vehicle door.

24.     Defendant Hesterhagen lunged forward and grabbed Mr. Akpoke roughly by his shirt.

25.     Defendant Hesterhagen violently yanked Mr. Akpoke up out of his seat.

26.     Mr. Akpoke and the other occupants of the vehicle had given Individual Defendants no justification to use any force in their interaction.  At all times during the unreasonable stop, including the moment when Defendant Hesterhagen ordered Mr. Akpoke out of the vehicle, Mr. Akpoke and all occupants of the vehicle had complied with all of Defendant Hesterhagen's directives and answered all of Defendant Hesterhagen's questions.

27.     Defendant Hesterhagen yanked Mr. Akpoke with such force, and so suddenly, Mr. Akpoke's head fell backward then forward in a whiplash-like motion and struck the vehicle at great speed and with great force as Defendant Hesterhagen intended.

28.     The impact of Mr. Akpoke's head striking the vehicle caused Mr. Akpoke's forehead to later develop a large swelling the shape and size of an egg.

29.     Defendant Hesterhagen's use of force to strike Mr. Akpoke against the vehicle was, in light of Mr. Akpoke's total compliance during the police stop, excessive and in violation of Mr. Akpoke's constitutional rights.

30.     Defendants searched the vehicle without cause, opening Mr. Akpoke's backpack and dashboard.  There was a split in the dashboard.  Defendants grabbed the break in the

dashboard and broke it open further, hoping to find contraband despite having no reason to suspect there was contraband inside.  There was no contraband inside.

31.     Individual Defendants arrested Mr. Akpoke and Individual Defendants made false allegations against him in an effort to justify the excessive force used against him.  Individual Defendants also made false allegations against Prince Harris.  Defendant Officer Hesterhagen, for example, fabricated evidence about the location of the alleged weapons and averred that they were in places that they never were, and at times Defendant Officer Hesterhagen contradicts himself by stating that a particular alleged weapon was found in one location when he previously stated it was elsewhere.  As stated, above, the other Individual Defendants failed to intervene.

32.     All of the above occurred as a direct result of the unconstitutional policies, customs or practices of the City of New York, including, without limitation, the inadequate screening, hiring, retaining, training and supervising of its employees, and due to a custom, policy and/or practice of, inter alia, treating persons with excessive force without justification and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in using excessive force against those individuals.

33.     The aforesaid incident is not an isolated incident.  The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct as documented in civil rights actions filed in the United States District Courts in the Eastern and Southern Districts of New York as well as in New York State courts.  As a result, Defendant City of New York is aware (from said lawsuits as well as notices of claims, complaints filed with the NYPD's Internal Affairs Bureau and the CCRB, and anecdotal evidence) that many NYPD officers, including Defendant here, use unjustified excessive force on arrestees and fabricate evidence in order to explain it away.

34.      Defendant City of New York is thus aware that its improper training and customs and policies have often resulted in a deprivation of individuals' constitutional rights.  Despite such notice, Defendant City of New York has failed to take corrective action.  This failure caused Individual Defendants in this case to violate Plaintiffs' constitutional rights.

35.      Moreover, on information and belief, Defendant City of New York was aware, prior to the incident, that the Individual Defendants lacked the objectivity, temperament, maturity, discretion and disposition to be employed as police officers.  Despite such notice, Defendant City of New York has retained these officers, and failed to adequately train and supervise them.

36.      All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under color of state law.

37.      All of the aforementioned acts deprived Plaintiffs of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the United States Constitution, and in violation of 42 U.S.C. § 1983.

38.      The acts complained of were carried out by the aforementioned Individual Defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

39.      The acts complained of were carried out by the aforementioned Individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures and the rules of the Defendant City of New York and the NYPD, all under the supervision of ranking officers of said department.

40.      Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

7

41.     As a result of the foregoing, Mr. Akpoke is entitled to compensatory and punitive damages in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## FIRST CLAIM
### 42 U.S.C. § 1983

42.     Mr. Akpoke repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

43.     Defendants, by their conduct toward Mr. Akpoke alleged herein, violated Mr. Akpoke's rights guaranteed by 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the Constitution of the United States.

44.     Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly with malice and with the specific intent to deprive Mr. Akpoke of his constitutional rights.

45.     As a direct and proximate result of Defendants' unlawful conduct, Mr. Akpoke sustained the damages hereinbefore alleged.

## SECOND CLAIM
### UNREASONABLE STOP AND SEARCH

46.     Mr. Akpoke repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

47.     Defendants violated the Fourth and Fourteenth Amendments because they pulled Mr. Akpoke's vehicle over without reasonable suspicion or probable cause.

48.     Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Mr. Akpoke of his constitutional rights.

49.     As a direct and proximate result of Defendants' unlawful conduct, Mr. Akpoke

sustained the damages hereinbefore alleged.

### THIRD CLAIM
### EXCESSIVE FORCE

50.     Mr. Akpoke repeats and re-alleges each of the preceding allegations contained in

this Complaint with the same force and effect as if fully set forth herein.

51.     The level of force employed by Defendant Hesterhagen was excessive,

objectively unreasonable and otherwise in violation of Mr. Akpoke's Fourth Amendment and

Fourteenth Amendment rights.

52.     As a direct and proximate result of Defendants' unlawful conduct, Mr. Akpoke

was subjected to excessive force and sustained the injuries hereinbefore alleged.

### FOURTH CLAIM
### FAILURE TO INTERVENE

53.     Mr. Akpoke repeats and re-alleges each of the preceding allegations contained in

this Complaint with the same force and effect as if fully set forth herein.

54.     The Individual Defendants actively participated in the aforementioned unlawful

conduct and observed such conduct, had an opportunity to prevent such conduct, had a duty to

intervene and prevent such conduct and failed to intervene.

55.     Accordingly, the Individual Defendants who failed to intervene violated the

Fourth and Fourteenth Amendments of the United States Constitution.

56.     Individual Defendants' unlawful actions, which were committed under color of

state law, were done willfully, knowingly, with malice and with the specific intent to deprive Mr.

Akpoke of his constitutional rights.

57.     As a direct and proximate result of Defendants' unlawful conduct, Mr. Akpoke

and D.C. sustained the damages hereinbefore alleged.

## FIFTH CLAIM
## MONELL

58.    Mr. Akpoke repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

59.    Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

60.    The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York and the NYPD included, but were not limited to, the inadequate screening, hiring, retaining, training and supervising of its employees that was the moving force behind the violation of Mr. Akpoke's rights as described herein.  As a result of the failure of the Defendant City of New York to properly recruit, screen, train, discipline and supervise its officers, including the Individual Defendants, Defendant City of New York has tacitly authorized, ratified and has been deliberately indifferent to, the acts and conduct complained of herein.

61.    The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York and the NYPD included, but were not limited to, the use of unjustified force in making arrests and/or the manufacture of false evidence against individuals in an individual effort and also in a conspiracy to justify the police's abuse of authority.

62.    The foregoing customs, policies, usages, practices, procedures and rules of the Defendant City of New York and the NYPD constituted deliberate indifference to Mr. Akpoke's safety, well-being and constitutional rights.

63.    The foregoing customs, polices, usages, practices, procedures and rules of Defendant City of New York and the NYPD were the direct and proximate cause of the constitutional violations suffered by Mr. Akpoke as described herein.

10

**PRAYER FOR RELIEF WHEREFORE**, Mr. Akpoke respectfully requests the following relief:

A. An order entering judgment for Mr. Akpoke against Defendants on each of their claims for relief;

B. Awards to Mr. Akpoke for compensatory damages against all Defendants, jointly and severally, for their violation of Mr. Akpoke's Fourth and Fourteenth Amendment rights, the amount to be determined at jury trial, which Mr. Akpoke respectfully demand pursuant to FRCP 38;

C. Awards to Mr. Akpoke of punitive damages against Defendants on the basis of their conscious wrongdoing and callous indifference to Mr. Akpoke's constitutional rights and welfare, the amount to be determined at jury trial, which Mr. Akpoke respectfully demands pursuant to FRCP 38;

D. Awards to Mr. Akpoke of the costs of this action, including reasonable attorneys' fees;

E. Such further relief as this Court deems just and proper.

DATED:        May 5, 2016
              New York, New York

                                         /s
                                  _____
                                  Ryan Lozar  (RL0229)
                                  305 Broadway, 10th Floor
                                  New York, New York 10007
                                  (310) 867-1562

                                  *Attorney for Plaintiff*