The Law Office of Ryan Lozar, P.C.
305 Broadway, 10th Floor, New York, NY 10007
Tel: (310) 867-1562; Alternate Tel: (646) 666-8262; Fax (877) 666-4456
ryanlozar@gmail.com
www.ryanlozar.com/www.luchaportusderechos.com



OCTOBER 5, 2016

Re:   Akpoke v. City of N.Y., et al., No. 15 Civ. 6960 (ILG) (CLP)

Dear Judge Pollak:

I represent Plaintiff in the above-captioned Section 1983 police misconduct litigation. The Parties have corresponded, met and conferred at length about discovery and other disputes in this action. We have been productive in resolving some disputes, but others persist. At the same time I make this motion on Plaintiff's behalf, **_I make a joint motion on behalf of the Parties to extend Defense Counsel's time to respond through and including Thursday, October 13, 2016_**. The request for the Court's accommodation in this regard is due to Defense Counsel being out of the office for a number of days this week and next due to the holidays, vacation and holidays.

### I.   Disciplinary Files

#### a.   Defendants' Late-Stage Objection Has Significantly Delayed Discovery

One of the larger disputes relates to the Defendants' disciplinary files. On April 6, 2016, Plaintiff served Defendants with discovery requests addressing these files. On various occasions, Plaintiff reminded Defendants about these records, and Plaintiff thought that production was simply delayed. On September 26, 2016, just two days before Defendant Officer Golat's deposition, Defendants objected to producing the files. The Parties cancelled the deposition as a result.

At this writing, Defendants now agree that they will produce some disciplinary files arising from substantiated allegations.[1] As for unsubstantiated files, Defendants suggest that they start out by producing summary reports. According to Defendants, if a summary report piques Plaintiff's interest, Plaintiff can request the full file corresponding. Then, Defendants will either produce or object, and in the latter circumstance, Plaintiff can make a file-specific motion to compel.

Plaintiff believes that Defendants' proposal is cumbersome and will cause even more delay to discovery that has already been greatly delayed by the Defendants' unexpected late-stage objection to disciplinary-file production. In order to reach some middle ground I offered to examine the files in a Law Department conference room and only request Bates-numbered pages of true interest, but Defendants have rejected my proposal. In light of Defendants' rejection of my compromise, I argue that the files must be directly produced.

---

[1] With one notable exception, which is that Defendants dispute that they must produce substantiated files when the allegation was failure to create departmental records, but the accompanying allegations went unsubstantiated. Plaintiff argues that such substantiated files must be produced because Defendants failed to create required departmental records in this case, for example, relating to their use of force upon him, or a stop-and-frisk report that is required in the context of vehicle stops.

### b. Defendants' Proportionality Argument

Defendants argue that the file production is not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). As a preliminary matter, Plaintiff argues that Defendants' extremely belated proportionality objection is waived for untimeliness. "The law is well settled that a failure to assert objections to a discovery request in a timely manner operates as a waiver." Eldaghar v. City of N.Y. Dep't of Citywide Admin. Srvs., No. 02 Civ. 9151 (KMW) (HBP), 2003 WL 22455224, at *1 (SDNY Oct. 28, 2003). Here, Plaintiff requested the records in April, sent various deficiency letters, and Defendants objected in late September.

Assuming, arguendo, that the objection remains available, its substance is not properly invoked. Proportionality concerns look to factors such as (1) "the importance of the discovery in resolving the issues in the case," (2) whether the discovery is "unreasonably cumulative or duplicative," and (3) whether the discovery is likely to needlessly cause a party "embarrassment." Creighton v. City of N.Y., No. 12 Civ. 7454 (PGG) (DF), 2016 WL 1178648, at *1 (SDNY Mar. 17, 2016) (discussing Fed. R. Civ. P. 26(b), (c)).

Taking these factors in turn, I argue that the records are important to the resolution of the case because the officers' records are indisputably relevant to the case and may contain information admissible at trial. See, e.g., Stern v. Shammas, 2015 WL 4530473, at *9 (EDNY July 27, 2015) (admitting certain evidence from an officer's disciplinary record at trial pursuant to FRCP 404(b)(2) and discussing how the plaintiff might move to use still other records at trial pursuant to FRCP 608(b)). Next, production of the files would not be "cumulative or duplicative" because Defendants have never produced any of the information before, which is why Plaintiff is requesting that they do so now. Third, in terms of embarrassment, the request is certainly not intended to cause any, and various pretrial protections—for example, the confidentiality order and the Parties' eventual motions in limine—are in part designed to assure that I could not use the material to that end.

Finally, I note that proportionality concerns have already been taken into account because the files at issue correspond to disciplinary index entries which have only been produced to Plaintiff in the first instance because they have been identified for containing allegations of particular relevance to this case. Matters for which this is not true were redacted out entirely.

### c. What's Good For The Goose Is Good For The Gander

It should be noted that Defendants only suggest what is in effect a heightened relevance standard when it is their turn to produce sealed records. When it was Plaintiff's turn to produce sealed records, in contrast, Defendants asked for, and Plaintiff gave them, a global 160.50 release for his entire history and the underlying files without substantive or temporal limitation. Later, on August 25, 2016, when Defense counsel deposed Plaintiff, he questioned him about a sealed matter at length. Yet it was not until September 26, 2016, that Defendants began to contemplate the unfairness of such an approach for the first time.

## II. Previous Lawsuits

On the same date that Defendants objected to the disciplinary files, they objected to releasing any information about previous civil rights lawsuits involving the officers and/or criminal convictions. Defense

counsel takes the position that Plaintiff and Defendants are in an equally good position to search court dockets.

Although I don't generally agree with that premise, I offered a compromise, which is that I would narrow my request to state lawsuits alone. As the Court may know, it is not as easy for the general public to conduct electronic searches of state dockets. However, if an officer were sued for a civil rights violation in state court, it is likely that his or her personnel file would mention that fact. Defendants disagree and disavow any obligation to state whether Defendants have been sued for civil rights violations in the past.

### III. Formalized Training Records

An annotation on an already-produced disciplinary index shows that one of the Defendants was directed to undergo "formalized training" in connection with misconduct similar to the misconduct alleged in this case. Plaintiff argues that this is relevant to this action and should be produced. Defendants disagree.

### IV. Disciplinary Indices For At Least One Officer Are Incomplete

As mentioned above, Plaintiff is seeking officer disciplinary files. As the Court may know, the Parties identify such files in the first instance by reviewing an individual officer's CCRB, IAB and other summary disciplinary indices. Unfortunately, the disciplinary indices produced for one of the officers cover less than 10% of the time he has spent working for the NYPD. Given the volume of complaints that correspond to that small fraction of his career, a look at the disciplinary indices for the other 90+% of his career may have something relevant for Plaintiff to consider. As one example of how the balance of the officer's indices might be found, Plaintiff respectfully argues that because an officer's tax number and shield number may change over the course of his or her career due to leave, promotion or some other change in status, review of the officer's previous identifying numbers could be a fruitful pursuit.

Defense Counsel has suggested that Defendants' obligation to make such an inquiry depends on whether I can prove whether and when this officer's tax registration number or shield number change had transpired here. I disagree for at least two reasons.

First, Plaintiff believes that because it is axiomatic that officers' tax and shield numbers may change, Defendants are obligated as a matter of course to conduct a historical inquiry into those facts in order to certify to an adversary or the Court that an officers' records are complete as produced. In other words, because it is always within the realm of possibility that a defendant officer's tax and/or shield numbers have changed, due diligence requires Defendants to research this information in order to perform accurate searches.

Second, I believe that assuming, <u>arguendo</u>, that Plaintiff has any burden of proof before he can make this argument, he has met it on this record which permits reasonable inference that the officer's records are incomplete. Consider Plaintiff's point that the officer experienced many complaints in the small window of time giving rise to the indices produced. Defense Counsel suggests that a reasonable explanation for this is that the officer suffered a sudden and unique burst of complaints but no others, ever. Plaintiff respectfully disagrees that that reasonably defeats Plaintiff's reasonable alternate interpretation, which is that we have an incomplete picture.

V.   **The Identities Of Additional Officers On the Scene**

Finally, and as the Court may recall, Plaintiff has long sought the identities of the other officers on the scene. None have been produced to date. Plaintiff recollects many officers arriving on the scene after the unlawful stop and while the unlawful search was underway.

There may be numerous ways to identify these officers. Defendants have produced an "event chronology report," but unlike a SPRINT report, its content is not very useful on its face and it has been my experience that officers don't know what to make of the record or its acronyms and codes during a deposition. That leaves Plaintiff in a position where he must request a FRCP 30(b)(6) witness to aid in translating the report, but it is not clear if even that would be productive. Much more certain is that radio transcripts might yield the requested information or that the memo books of other officers on the same tour would mention something. Simple inquiry of Defendant parties might also be fruitful.

Thank you for your time and consideration.

Sincerely,

Ryan Lozar