15-CV-6960 (ILG) (CLP)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NCHEWI AKPOKE,

Plaintiff,

-against-

CITY OF NEW YORK, NYPD OFFICER ROBERT
HESTERHAGEN, Shield No. 7727, NYPD OFFICER
DANIEL GOLAT, Shield No. 9913, NYPD SERGEANT
MICHAEL DICECCO, Tax #903799,

Defendant(s).

**DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION FOR SUMMARY
JUDGMENT**

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Evan Brustein*
*Tel:  (212) 356-2651*
*Matter No. 2015-054128*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................iii

BACKGROUND ....................................................................................................................1

DISCUSSION .........................................................................................................................4

POINT I

            PLAINTIFF'S STAND ALONE SECTION 1983
            CLAIM MUST BE DISMISSED .........................................................5

POINT II

            PLAINTIFF'S UNREASONABLE SEARCH
            CLAIM MUST BE DISMISSED .........................................................6

            A.   This Case Is Not Controlled by *Heck v.
                 *Humphrey* .............................................................................6

            B.   Application to the Present Case.........................................8

                 1.  Plaintiff Has Failed to Provide Any
                     Evidence of Personal Involvement by
                     Golat and Dicecco.....................................................8

                 2.  Plaintiff Has Failed to Provide Sufficient
                       Evidence That Officer Hesterhagen
                       Unreasonably or Maliciously Damaged
                       His Dashboard............................................................9

POINT III

            PLAINTIFF'S "FAILURE TO INTERVENE"
            CLAIM MUST BE DISMISSED .......................................................13

POINT IV

            PLAINTIFF'S *MONELL* CLAIM MUST BE
            DISMISSED .......................................................................................17

POINT V

            PLAINTIFF SHOULD BE ORDERED TO PAY
            DEFENDANTS' FEES AND COSTS .................................................18

**Page**

CONCLUSION ............................................................................................................... 20

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                                        <u>**Pages**</u>

*Adams v. Orange County*,
    13-CV-8549 (VB), 2015 U.S. Dist. LEXIS 126021 (S.D.N.Y. Sep. 1, 2015) .......................18

*Anderson v. Branen*,
    17 F.3d 552 (2d Cir. 1994).................................................................................................14

*Arizona v. Gant*,
    556 U.S. 332 (2009)...........................................................................................................6

*Bender v. Alvarez*,
    06-CV-3378 (CBA) (LB), 2008 U.S. Dist. LEXIS 123544,
    (E.D.N.Y. Dec. 9, 2008),
    *adopted by*, 2009 U.S. Dist. LEXIS 3171 (E.D.N.Y. Jan. 15, 2009).....................................10

*Biswas v. City of New York*,
    973 F. Supp. 2d 504 (S.D.N.Y. 2013),
    *appeal dismissed*, 576 F. App'x 58 (2d Cir. 2014).................................................................5

*Bouche v. City of Mount Vernon*,
    11-CV-5246 (SAS), 2012 U.S. Dist. LEXIS 40246 (S.D.N.Y. Mar. 22, 2012).....................14

*Brandon v. City of New York*,
    705 F. Supp. 2d 261 (S.D.N.Y. 2010).....................................................................................5

*Briukhan v. City of New York*,
    147 F. Supp. 3d 56 (E.D.N.Y. 2015) ....................................................................................14

*Cody v. Mello*,
    59 F.3d 13 (2d Cir. 1995)..............................................................................................7, 12

*Dalia v. United States*,
    441 U.S. 238, 99 S. Ct. 1682, 60 L. Ed. 2d 177 (1979)..........................................................7

*Daniels v. Williams*,
    474 U.S. 327 (1986)............................................................................................................7

*Davidson v. Keenan*,
    740 F.2d 129 (2d Cir. 1984)................................................................................................19

*Dockery v. Tucker*,
    97-CV-3584 (ARR) (RLM), 2008 U.S. Dist. LEXIS 49426
    (E.D.N.Y. June 25, 2008) ...............................................................................................7, 13

**Cases**          **Pages**

*Folk v. City of New York*,
    15-CV-5810 (WFK) (CLP) 2017 U.S. Dist. LEXIS 46636
    (E.D.N.Y. Mar. 20, 2017) .................................................................................5

*Frederique v. County of Nassau*,
    168 F. Supp. 3d 455 (E.D.N.Y. 2016) ...........................................................7, 8, 9

*Gerena v. Pezdek*,
    9:13-CV-953, 2015 U.S. Dist. LEXIS 165083 (N.D.N.Y. Dec. 8) ..........................9

*Hartnagel v. City of New York*,
    10-CV-5637 (TLM), 2012 U.S. Dist. LEXIS 60333 (E.D.N.Y. Apr. 30, 2012) .....................9

*Heck v. Humphrey*,
    512 U.S. 477 (1994)......................................................................................6, 7

*Koller v. Hoffkins*,
    2013 U.S. Dist. LEXIS 185134 (D. Conn. Dec. 23, 2013).............................. 12-13

*Kropelnicki v. Siegel*,
    290 F.3d 118 (2d Cir. 2003).........................................................................19

*Lehal v. United States*,
    13-CV-3923 (DF), 2015 U.S. Dist. LEXIS 173610 (S.D.N.Y. Dec. 29, 2015) .....................15

*Leon v. City of New York*,
    09-CV-8609 (WHP), 2010 U.S. Dist. LEXIS 67660 (S.D.N.Y. July 1, 2010) .....................10

*Lewis v. City of Mount Vernon*,
    984 F. Supp. 748 (S.D.N.Y. 1997) .............................................................9, 10

*Liranzo v. City of New York*,
    11-CV-4434, 2012 U.S. Dist. LEXIS 178872 (S.D.N.Y. Dec. 11, 2012) .............................10

*Marom v. City of New York*,
    15-CV-2017 (PKC), 2016 U.S. Dist. LEXIS 28466 (S.D.N.Y. Mar. 7, 2016)......................15

*McCormick v. Terwilliger*,
    11-CV-6444 (FPG), 2015 U.S. Dist. LEXIS 129425
    (W.D.N.Y. Sep. 25, 2015) ...........................................................................16

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978)......................................................................................3, 4

*Morris v. City of New York*,
    14-CV-1749, 2015 U.S. Dist. LEXIS 54550 (E.D.N.Y. Apr. 27, 2015) ..............................17

**Cases**                                                                                                          **Pages**

*Ogunkoya v. County of Monroe*,
    15-CV-6119 (KAM) (LB), 2017 U.S. Dist. LEXIS 86108
    (E.D.N.Y. June 2, 2017) .........................................................................................................14

*Reeder v. Holdridge*,
    09-CV-575 (DNH) (CFH), 2012 U.S. Dist. LEXIS 148675,
    (N.D.N.Y. Sep. 5), *adopted by*, 2012 U.S. Dist. LEXIS 147762
    (N.D.N.Y. Oct. 15, 2012).......................................................................................................16

*Ricciuti v. New York City Transit Auth.*,
    124 F.3d 123 (2d Cir. 1997)..................................................................................................17

*Richardson v. City of New York*,
    15-CV-5775 (PKC), 2017 U.S. Dist. LEXIS 104625 (S.D.N.Y. July 5, 2017).......................15

*Rodriguez v. City of New York*,
    2012 U.S. Dist. LEXIS 66548 (S.D.N.Y. May 10, 2012)........................................................16

*Rogers v. New York City Police Dep't*,
    12-CV-3042 (CBA) (MG), 2012 U.S. Dist. LEXIS 147663
    (E.D.N.Y. Oct. 12, 2012) ......................................................................................................18

*Sash v. United States*,
    674 F. Supp. 2d 531 (S.D.N.Y. 2009) ...................................................................................16

*Scalpi v. Town of East Fishkill*,
    14-CV-2126 (KMK), 2016 U.S. Dist. LEXIS 24521 (S.D.N.Y. Feb. 26, 2016).............15, 16

*Schultz v. Village of Bellport*,
    479 F. App'x 358 (2d Cir. 2012) ..........................................................................................18

*Schweitzer v. Crofton*,
    560 F. App'x 6 (2d Cir. 2014) ..............................................................................................18

*Segal v. City of New York*,
    459 F.3d 207 (2d Cir. 2006)..................................................................................................18

*Simon DeBartolo Group v. Richard E. Jacobs Group*,
    186 F.3d 157 (2d Cir. 1999)..................................................................................................19

*Smalls v. Balicki*,
    2014 U.S. Dist. LEXIS 113143 (S.D.N.Y. June 24, 2014)...................................................7, 8

**Cases**                                                              **Pages**

*Toliver v. City of New York*,
    10-CV-5806 (SHS) (JCF), 2013 U.S. Dist. LEXIS 175670,
    (S.D.N.Y. Dec. 10, 2013),
    *adopted by*, 2014 U.S. Dist. LEXIS 17227 (S.D.N.Y. Feb. 11, 2014) ....................................16

*United States v. Ramirez*,
    523 U.S. 65 (1998)............................................................................................................7

*Vaher v. Town of Orangetown*,
    133 F. Supp. 3d 574 (S.D.N.Y. 2015)
    adopted by, 2015 U.S. Dist. LEXUS  173147 (N.D.N.Y. Dec. 30, 2015).....................7, 9, 13

*Waller v. City of Middletown*,
    50 F. Supp. 3d 171 (S.D.N.Y. 2014).....................................................................................15

**Statutes**

42 U.S.C. § 1988(b) ..........................................................................................................19

42 USC § 1983..............................................................................................3, 4, 5, 6, 7, 19

Fed. R. Civ. P. 11 ....................................................................................................1, 3, 4, 18, 19

Fed. R. Civ. P. 11(b)(3).......................................................................................................19

Fed. R. Civ. P. 11(c) .........................................................................................................20

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- x

NCHEWI AKPOKE,

                                              Plaintiff,

                    -against-

CITY OF NEW YORK, NYPD OFFICER ROBERT
HESTERHAGEN, Shield No. 7727, NYPD OFFICER
DANIEL GOLAT, Shield No. 9913, NYPD SERGEANT
MICHAEL DICECCO, Tax #903799,

                                              Defendants.

----------------------------------------------------------------------- x

**DEFENDANTS'
MEMORANDUM OF LAW
IN SUPPORT OF THEIR
MOTION FOR SUMMARY
JUDGMENT**

15-CV-6960 (ILG) (CLP)

 

 

Defendants City of New York (the "City"), New York City Police Department ("NYPD") officers Robert Hesterhagen, Daniel Golat and Sergeant Michael Dicecco submit this memorandum of law in support of their motion for summary judgment and for attorney's fees and costs together with such other and further relief as the Court deems just and proper as a sanction pursuant to FRCP 11.

## BACKGROUND

On July 2, 2015, at approximately 10:52 P.M., Officers Hesterhagen and Golat approached plaintiff's vehicle, which was stopped near an intersection in Staten Island. Defts' 56.1 ¶ 17. Plaintiff was the driver and owner of a 2001 Mitsubishi Galant (the "Galant"). His friend, whom plaintiff knows only as "Prince", was in the backseat of the vehicle. *Id*. ¶¶ 15-16. Plaintiff's vehicle, which he purchased in November 2014, had a variety of interior and exterior structural issues at the time, including damage to the dashboard. *Id*. ¶¶ 7-14. Plaintiff asserts that the dashboard had no more than a crack down its middle, though he admits that it "looked like one side was dented in and the other side was open, like a gap, a hole." *Id*. ¶¶ 10-11.

Upon approaching the Galant, Officer Hesterhagen shined a flashlight into the vehicle and observed the handle of a large knife next to plaintiff. *Id.* ¶ 18. The handle of the knife was sticking up at an angle next to the seat where the seat belt would fasten, a couple of inches from plaintiff's right hand. *Id.* ¶¶ 20-21. Plaintiff told the officers "that's my machete". *Id.* ¶ 19. Officer Hesterhagen signaled for Officer Golat to remove plaintiff from the vehicle because of the danger the machete posed. *Id.* ¶ 22. Plaintiff and Prince exited the Galant and were handcuffed and arrested. *Id.* ¶¶ 23 & 28.

After plaintiff and Prince were handcuffed, Officer Hesterhagen searched the inside of the Galant for additional weapons. *Id.* ¶¶ 24-26. He recovered the machete, a bludgeon and a gravity knife from the vehicle. *Id.* ¶¶ 27. Officer Golat, who was with plaintiff and Prince at the back of Galant next to the trunk during the vehicle search, never searched the interior of the Galant. *Id.* ¶¶ 28-29.

Though Officer Hesterhagen has no recollection of searching the dashboard of the Galant, plaintiff testified that it was broken further (*i.e.*, beyond the pre-existing crack) during the search to get at whatever was underneath. *Id.* ¶ 31. Plaintiff did not see anyone break the dashboard. Rather, he "just heard the plastic break" while the Galant was being searched. *Id.* ¶ 30. Aside from the dashboard allegedly being further split open, there was no other damage to the Galant during the search. *Id.* ¶ 32.

Sergeant Dicceco, who was Hesterhagen's and Golat's Anti-Crime supervisor on the day in question, arrived on scene after plaintiff and Prince had been arrested and the weapons were recovered. *Id.* ¶¶ 4-5 & 36. He never looked inside of the Galant. *Id.* ¶ 37. Plaintiff was charged with criminal possession of a weapon in the fourth degree and ultimately pleaded guilty to disorderly conduct. *Id.* ¶¶ 39-41.

This action was commenced on December 9, 2015, alleging claims for excessive force, failure to intervene, and *Monell*. *see generally* Complaint, Civil Docket Report, at Document No. 1.  Plaintiff filed a First Amended Complaint ("FAC"), on May 5, 2016, and added a claim for unreasonable stop and search, and for the first time alleged that any damage was done to his vehicle. *See generally*, Civil Docket Report, at Document No. 15.  At no time during this case did the plaintiff request any discovery relating to any purported municipal liability claim against the City pursuant to 42 USC §1983 and *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *See* Declaration of Evan Brustein, dated September 1, 2017 ("Brustein Decl."), at ¶ 12.  Neither party produced any documents or evidence of plaintiff's purported municipal liability claim.  Brustein Decl., at ¶ 13.

On May 12, 2017, plaintiff wrote the Court to advise that he was withdrawing his excessive force claim, but proceeding with the unlawful search claim. *See* Status Report, dated May 12, 2017, Civil Docket Report, at Document No. 49.  During the May 16, 2017 Status Conference, the Court told plaintiff's counsel that he should convince his client to withdraw the case and ordered him to update the Court within 30 days of plaintiff's decision. *See* Declaration of Evan Brustein, dated September 1, 2017 ("Brustein Decl."), at ¶ 14.  On June 16, 2017, plaintiff filed a status report, indicating that he was proceeding with the case. *See* Plaintiff's Motion, dated June 1, 2017, Civil Docket Report, at Document No. 52.

On June 28, 2017, Defendants sent plaintiff a Rule 11 Safe Harbor Letter, detailing the grounds for the summary judgment motion and their intention to move for sanctions if plaintiff failed to withdraw this case. *See* Defendants' Rule 11 Safe Harbor Letter, dated June 28, 2017, attached to Brustein Decl. as Exhibit "H."  On June 28, 2017, in response to Defendants' Rule 11 Safe Harbor Letter, Plaintiff's counsel merely responded, "Received.

Thank you." *See* Email Correspondence between Defendants' counsel and plaintiff's counsel, attached to Brustein Decl. as Exhibit "I."  On July 25, 2017, Defendants' counsel followed up with plaintiff's counsel regarding the Safe Harbor Letter and whether plaintiff would withdraw any of the claims, and if not, in which underlying claim plaintiff alleged Defendants failed to intervene.  *Id.*  On July 26, 2017, plaintiff's counsel provided no legal basis for continuing his claims, but stated that he had read the Rule 11 letter and knew the record and the law and believed he had a good faith basis to proceed.  *Id.*

## DISCUSSION

In his FAC, plaintiff alleges:  (1) a claim pursuant to 42 U.S.C. § 1983 with no stated underlying constitutional violation other than a reference to the Fourth and Fourteenth Amendments and "Defendants' unlawful conduct", *see* FAC ¶¶ 42-45; (2) an "unreasonable stop and search" claim premised on an allegation that the defendant officers "pulled [plaintiff's] vehicle over without reasonable suspicion or probable cause", *see id.* ¶¶ 46-49, which plaintiff has abandoned in part[1]; (3) an excessive force claim, *see id.* ¶¶ 50-52, which plaintiff also has decided to withdraw[2]; (4) a "failure to intervene" claim that is not tethered to any of his other claims,[3] *see id.* ¶¶ 53-57; and (5) a claim pursuant to *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978) that states, with no elaboration, that the City and the NYPD had "customs, policies, usages, practices, procedures and rules" involving "the use of unjustified force in making arrests and/or the manufacture of false evidence against individuals".  *Id.* ¶¶ 58-63.  For the reasons set

---

[1] In his letter to the Court, dated June 16, 2017, plaintiff admitted he "does not have an unlawful stop or false arrest claim".  However, he asserted he would continue with his unlawful search claim, which he limited to the damage to his dashboard.  *See* Plaintiff's June 16, 2017 Letter to the Court (Docket Entry 51) at 2-3.

[2] *See* Plaintiff's May 12, 2017 Letter to the Court (Docket Entry 49) at 1.

[3] Plaintiff merely states that the police officer defendants had a duty and the opportunity to intervene in the "aforementioned unlawful conduct" and failed to do so.  FAC ¶ 54.

4

forth below, none of plaintiff's remaining claims have merit, and his FAC should be dismissed in its entirety with sanctions imposed on plaintiff and/or his counsel.

## POINT I

### PLAINTIFF'S STAND ALONE SECTION 1983
### CLAIM MUST BE DISMISSED

Plaintiff's first cause of action in insufficiently pleaded and should be dismissed because it fails to sufficiently identify the basis for the claim.  As the court stated in *Folk v. City of New York*, 15-CV-5810 (WFK) (CLP) 2017 U.S. Dist. LEXIS 46636 (E.D.N.Y. Mar. 20, 2017):

> Plaintiff's first substantive claim – a violation of her Fourth, Fifth, and Fourteenth Amendment rights raised pursuant to 42 U.S.C. § 1983 – must be dismissed for failure to provide Defendants, or this Court, notice regarding the substance of or factual basis for this claim.  To state a claim under § 1983, a complaint must allege the conduct at issue (1) was "attributable. . . to a person who was acting under color of state law" and (2) "deprived the plaintiff of a right guaranteed under the Constitution of the United States." With regard to the second element, "[s]ection 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere," and Plaintiff must be specific as to which of her constitutional rights were violated in order to provide Defendants with "fair notice of what the claim is and the grounds upon which it rests".

2017 U.S. Dist. LEXIS 46636 at *7-8 (citations omitted).

Where, as in the present case, a plaintiff fails to identify which constitutional rights guaranteed by the Fourth and Fourteenth Amendments were allegedly violated or specify the factual basis for a claim, such claim should be dismissed.  *Id.* at 8-9 (citing *Brandon v. City of New York*, 705 F. Supp. 2d 261, 264, 268-69 (S.D.N.Y. 2010)); *see also Biswas v. City of New York*, 973 F. Supp. 2d 504, 540 (S.D.N.Y. 2013) (insufficient for plaintiff to merely repeat and reallege previous allegations), *appeal dismissed*, 576 F. App'x 58 (2d Cir. 2014).

## POINT II

## PLAINTIFF'S UNREASONABLE SEARCH CLAIM MUST BE DISMISSED

As noted, plaintiff has withdrawn his unlawful vehicle stop claim.  *See* note 1, *supra*.  The surviving claim in his second cause of action is the thinly pleaded (if not entirely unpleaded) claim that the defendant officers unreasonably or maliciously damaged dashboard irrespective of the constitutionality of his stop and/or arrest.[4]  For the reasons set forth below, this claim should be dismissed.

### A.    This Case Is Not Controlled by *Heck v. Humphrey*

Plaintiff's fascination with *Heck v. Humphrey*, 512 U.S. 477 (1994) is puzzling. *See* Plaintiff's June 16, 2017 Letter to the Court (Docket Entry 51) at 3.  *Heck* merely addressed the requirement that a Section 1983 plaintiff challenging the unlawfulness of his conviction and/or imprisonment must show that his conviction or sentence was reversed, declared invalid, etc.  The Court in that case merely observed that certain actions challenging the constitutionality of a search attendant to such a conviction or sentence would not require such a showing where the invalidity of the search did not impugn the validity of the conviction or sentence.  *See* 512 U.S. at 486-87.  The Court used as examples of cases where a conviction and search could be valid and invalid, respectively, situations where the incriminating evidence would have been discovered legitimately pursuant to the "independent source" or "inevitable discovery" doctrine. *Id.* at 512 U.S. at 487 n.7.  The Court did not address the viability of a claim for property damage occurring during the execution of an otherwise valid search.  *Heck* did not, as plaintiff seems to imply, create a special type of unreasonable search claim or otherwise lessen the requirements

---

[4] As such, the variety of constitutional bases for the search of the Galant, *see, e.g., Arizona v. Gant*, 556 U.S. 332, 346 (2009), are not at issue in this case.

for a property damage claim where, as in the present case, the officer had a constitutional basis to conduct his search.[5]

Rather, *United States v. Ramirez*, 523 U.S. 65 (1998), and similarly decided cases, establish a Section 1983 plaintiff's entitlement to damages in the type of scenario alleged by plaintiff.  Pursuant to these cases:

> While "[e]xcessive or unnecessary destruction of property" in the course of an otherwise valid search "may violate the Fourth Amendment," *Ramirez*, 523 U.S. at 71, "it is well recognized that 'officers executing search warrants on occasion must damage property in order to perform their duty.'" *Cody v. Mello*, 59 F.3d 13, 16 (2d Cir. 1995) (quoting *Dalia v. United States*, 441 U.S. 238, 258, 99 S. Ct. 1682, 60 L. Ed. 2d 177 (1979)).

*Vaher v. Town of Orangetown*, 133 F. Supp. 3d 574, 591 (S.D.N.Y. 2015).  In order to recover, "it must be established that the police acted unreasonably or maliciously in bringing about the damage".  *Cody*, 59 F.3d at 16 (citing cases).  "Mere negligence is not enough." *Id.* (citing *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986); *accord Vaher*, 133 F. Supp. 3d at 592. Neither is a mere showing that there was "tangential destruction of items that could not contain the object of the search" sufficient.  *Vaher*, 133 F. Supp. 3d at 592; *Dockery v. Tucker*, 97-CV-3584 (ARR) (RLM), 2008 U.S. Dist. LEXIS 49426 at 32 (E.D.N.Y. June 25, 2008). Furthermore, as with any Section 1983 claim, plaintiff is required to establish that each defendant was personally involved in the alleged deprivation.  *E.g., Frederique v. County of Nassau*, 168 F. Supp. 3d 455, 475 (E.D.N.Y. 2016); *Smalls v. Balicki*, 2014 U.S. Dist. LEXIS 113143 at 12-13 (S.D.N.Y. June 24, 2014).

---

[5] *Heck* certainly did not indicate that "a working person with modest means" is entitled to a greater claim for an "affront to his dignity" than other Section 1983 plaintiffs.  *See* Plaintiff's June 16, 2017 Letter to the Court (Docket Entry 51) at 2 n.1.

**B.**     **Application to the Present Case**

Plaintiff has failed to provide sufficient evidence that Officers Golat or Dicecco were personally involved in the alleged damage to plaintiff's dashboard.  Furthermore, plaintiff has failed to raise a genuine issue that Officer Hesterhagen unreasonably or maliciously damaged plaintiff's dashboard.  Specifically, there is insufficient evidence that Hesterhagen's conduct was either intentional or not in furtherance of the legitimate objectives of his search.

**1.   Plaintiff Has Failed to Provide Any Evidence of Personal Involvement by Golat and Dicecco**

As noted, where a plaintiff asserts that his or her property was unreasonably or maliciously damaged, he or she must provide evidence that the defendants accused of doing so actually participated in the offending conduct.  *See e.g.*, *Frederique,* 168 F. Supp. 3d at 475; *Smalls*, 2014 U.S. Dist. LEXIS 113143 at *12-13.  Assuming for the moment that plaintiff's dashboard was unreasonably or maliciously damaged during the search of the Galant, plaintiff has failed to provide any evidence that Golat and Dicecco participated in any such damage.

Plaintiff admits that he did not see who broke his dashboard and that he was outside of the Galant at the time.  The evidence in the record indicates that Officer Golat was with plaintiff and Prince, who were in handcuffs, at the back of the vehicle near its trunk.  *See* Defts' 56.1 ¶ 28.  It was at that time plaintiff "heard the plastic break", which is when he asserts the damage to his dashboard occurred.  *Id.* ¶ 30.

Sergeant Dicecco, Golat's and Hesterhagen's Anti-Crime supervisor, was not even in the vicinity of the Galant at the time the alleged dashboard damage took place.  He arrived on the scene after the car had been searched and the weapons had been recovered.  *Id.* ¶¶ 36-38.  This undisputed fact precludes liability based on direct participation and a claim that

Dicecco failed to take appropriate action upon receiving information that a constitutional violation was occurring.

Accordingly, neither Golat nor Dicecco can be held liable for the damage to plaintiff's dashboard.[6] *See Frederique*, 168 F. Supp. 3d at 475 (holding that officers were not "personally responsible for any property damaged during the course of searching Plaintiffs' home, as [it] is undisputed that [one officer] never entered the Frederique Home and [the other officer] did not participate in any alleged search thereof"), and summary judgment is warrant in their favor.

### 2. Plaintiff Has Failed to Provide Sufficient Evidence That Officer Hesterhagen Unreasonably or Maliciously Damaged His Dashboard

Even though a determination whether property damage was "unreasonable or malicious" typically is not amenable to summary judgment, a plaintiff nevertheless must provide sufficient evidence at the summary judgment stage to show there are genuine issues of fact for trial. *Vaher*, 133 F. Supp. 3d at 592; *accord Gerena v. Pezdek*, 9:13-CV-953 (DNH) (ATB), 2015 U.S. Dist. LEXIS 165083, at *20 (N.D.N.Y. Dec. 8) (quoting *Vaher*, 133 F. Supp. 3d at 592 and noting that the plaintiff must provide "evidence that the defendants wantonly destroyed property or conducted the search 'in a manner inconsistent with its professed purpose'"), *adopted by*, 2015 U.S. Dist. LEXIS 173147 (N.D.N.Y. Dec. 30, 2015); *see also Hartnagel v. City of New York*, 10-CV-5637 (TLM), 2012 U.S. Dist. LEXIS 60333, at *9 (E.D.N.Y. Apr. 30, 2012) (quoting *Lewis v. City of Mount Vernon*, 984 F. Supp. 748, 756 (S.D.N.Y. 1997): "A search . . . will not be found to be unduly destructive where a plaintiff presents no evidence 'that officers

---

[6] To the extent plaintiff is claiming that either of these two defendants are liable pursuant to his vaguely pleaded "failure to intervene" cause of action, such a claim fails for the reasons set forth in Point III, *infra*.

wantonly damaged or destroyed property or conducted the search in a manner inconsistent with its professed purpose'."); *Bender v. Alvarez*, 06-CV-3378 (CBA) (LB), 2008 U.S. Dist. LEXIS 123544, at *23 (E.D.N.Y. Dec. 9, 2008) (plaintiff required to "demonstrate that defendants wantonly damaged or destroyed his property"), *adopted by*, 2009 U.S. Dist. LEXIS 3171 (E.D.N.Y. Jan. 15, 2009).  "Courts in this Circuit therefore consistently grant defendants summary judgment where evidence of such unreasonableness or maliciousness is lacking." *Liranzo v. City of New York*, 11-CV-4434, 2012 U.S. Dist. LEXIS 178872, at *37 (S.D.N.Y. Dec. 11, 2012) (citing cases).

In short, it is insufficient for plaintiff merely to rely on the fact that a search took place and that damage occurred as a result.  For example, in *Liranzo v. City of New York, supra,* plaintiffs claimed that members of the NYPD caused extensive damage to their premises during the execution of a search warrant.  Plaintiff's evidence of the unreasonableness of the search consisted of testimony that "there were huge holes in the ceiling and walls of the basement as large as a 20 inch by 20 inch tile."  2012 U.S. Dist. LEXIS 178872, at *38.  The court held that such evidence was insufficient to preclude summary judgment:

> The mere fact that there were holes in the walls and ceiling of the basement does not satisfy Plaintiffs' burden of demonstrating that Detective Perez "wantonly" or "maliciously" damaged or destroyed their property.  Indeed, Plaintiffs have not made any attempt to demonstrate that those holes are at all "inconsistent with [the] professed purpose" of the search – "finding illicit drugs." *Lewis*, 984 F. Supp. at 756.

*Id.*; *see also Leon v. City of New York*, 09-CV-8609 (WHP), 2010 U.S. Dist. LEXIS 67660, at *11 (S.D.N.Y. July 1, 2010) (dismissing plaintiff's claim where there were no allegations, other than property damage resulting from the search, that officers unreasonably or maliciously destroyed property or that they exceeded the scope of the warrant).

In the present case, the evidence assembled by plaintiff falls short of that necessary to raise a genuine issue for trial.  What we can surmise, viewing the evidence in a light favorable to plaintiff, is that a machete was observed by the officer(s) next to the driver's seat, there was a pre-existing "gap" or "hole" in the dashboard, plaintiff heard plastic cracking during the search of the Galant (though he saw nothing), and two additional weapons were recovered from the vehicle.  Other than what the dashboard allegedly looked like after the search, there is no further "evidence" upon which plaintiff could proceed to trial.  Because the defendant officers do not recall any damage to the dashboard, and there is no other contemporaneous evidence or documentation of the damage, plaintiff's recollection of the incident is the foundation of his case. At his deposition, plaintiff testified as follows:

> A.     The dashboard was cracked. They broke open the crack to try and get whatever they felt was underneath the dashboard.
>
> Q.     Where were you when they broke the dashboard?
>
> A.     Out, outside the car.
>
> Q.     Were you able to see them break the dashboard?
>
> A.     I just heard the plastic break.
>
> Q.     So you didn't actually see who broke this dashboard?
>
> A.     No.
>
> Q.     And you don't know who broke the dashboard, correct?
>
> A.     Correct.
>
> Q.     Now, do you know how the dashboard was broken?
>
> A.     Yes.  The dashboard, it was pulled – there was a crack already in the dashboard, so it looked like one side was dented in and the other side was open, like a gap, a hole.

\*                   \*                   \*

> Q.      So prior to Ju1y of 2015, can you please describe any and all of the damage, cosmetic or otherwise, to the interior of your 2001 Galant?

> A.      On the dashboard of the car there was a crack. There was a crack straight down the middle of the dashboard.  That was the damage to the interior prior to this incident.

Pltf's Dep. 189:22-190:14; 191:5-11.[7]

As an initial matter, for any damage to be actionable, it must have been done intentionally rather than negligently.  *See e.g., Cody*, 59 F.3d at 16.  Plaintiff has provided no evidence to suggest the former was the case, only speculation.  Given the substantial nature of the pre-existing opening in the dashboard, it certainly is likely that an unobtrusive inspection of the dashboard – *e.g.*, bending the plastic in the area of the crack to see what, if anything, might be hidden therein – could result in inadvertent further damage.  A photograph merely showing damage that plaintiff claims to have been excessive is insufficient.  *See Koller v. Hoffkins*, 2013

---

[7] **Plaintiff's photograph of the broken dashboard shows damage to the air conditioning vents, but plaintiff has not alleged in his FAC that the officers were responsible for that damage.  Despite wavering testimony, plaintiff ultimately admitted that his claim was limited to the cracked dashboard:**

> **Q.  And can you describe what damage you're claiming the officers are responsible for in that photograph?**

> **MR. LOZAR:  Objection.  You can answer.**

> **A.  The dashboard was cracked.  They split it open.  Broken into more pieces to look for –**

> **Q.  Without saying what they were looking for, just identify the damage you see in the photograph.**

> **MR. LOZAR:  Objection.  Asked and answered. You can answer again.**

> **Q.  If that was the end of your answer, then you don't need to continue.**

> **A. Yes, that was it.**

Pltf's Dep. 242:20-243:6.

U.S. Dist. LEXIS 185134, at *25 (D. Conn. Dec. 23, 2013) (post-search photographs showing "broken furniture, doors, appliances, and electronics, a damaged ceiling and balustrade, and devalued collectibles" not sufficient by itself to establish intentional or malicious damage).

Furthermore, even assuming Officer Hesterhagen intentionally damaged the Galant's dashboard, there is no basis to conclude that any damage was not in furtherance of the legitimate objectives of his search.  Plaintiff acknowledges that the officer conducting the search had a reason for breaking through the dashboard opening (assuming he did so) that was consistent with a valid search of the interior of the Galant for hidden weapons or other contraband.  *See* Pltf's Dep. at 189:22-24 ("[t]hey broke open the crack to try and get whatever they felt was underneath the dashboard").  As courts in this circuit have observed, even "the tangential destruction of items that could not contain the object of the search does not state a claim of constitutional magnitude".  *Vaher*, 133 F. Supp. 3d at 592 (quoting *Dockery*, 2008 U.S. Dist. LEXIS 49426, at *32).  In the present case, the evidence indicates no worse than damage to a portion of a dashboard that *could have* contained the object(s) of Officer Hesterhagen's search.

In sum, plaintiff has failed to raise a genuine issue that Officer Hesterhagen unreasonably or maliciously damaged plaintiff's dashboard, and summary judgment is warrant in his favor on this claim.

## POINT III

### PLAINTIFF'S "FAILURE TO INTERVENE" CLAIM MUST BE DISMISSED

As previously noted, plaintiff "failure to intervene" claim is not tied to any of his other claims.  Plaintiff merely states that the police officer defendants (he does not say which ones) failed in their duty to intervene in the "aforementioned unlawful conduct" (which he does not describe).  FAC ¶¶ 53-57.  Such vague allegations are insufficient to survive even a motion

to dismiss.  *See, e.g., Bouche v. City of Mount Vernon*, 11-CV-5246 (SAS), 2012 U.S. Dist. LEXIS 40246, at *24-25 (S.D.N.Y. Mar. 22, 2012) (dismissing a failure-to-intervene claim as vague and conclusory where plaintiff merely "allege[d] that '[d]efendants had an affirmative duty to intervene on behalf of plaintiff . . . whose constitutional rights were being violated in their presence by other officers'").

Furthermore, in light of plaintiff's decision not to pursue any stop, arrest or excessive force claim against any of the defendants, such "aforementioned unlawful conduct" cannot form the basis of any failure to intervene claim.  *See, e.g., Ogunkoya v. County of Monroe*, 15-CV-6119 (KAM) (LB), 2017 U.S. Dist. LEXIS 86108, at *28 (E.D.N.Y. June 2, 2017) ("An essential element of a failure to intervene claim is an underlying constitutional violation."); *Briukhan v. City of New York*, 147 F. Supp. 3d 56, 62 (E.D.N.Y. 2015) (same effect).  Given plaintiff's failure to allege that the damage to his dashboard was unlawful in any of his causes of action, it would appear as though plaintiff has no basis for a failure to intervene claim based on such damage.[8]

Assuming the Court is willing to entertain a failure-to-intervene claim premised on the damage to plaintiff's dashboard – in addition to concluding that plaintiff has a viable underlying claim in that regard – the record does not support such a claim against Officer Golat or Sergeant Dicecco.

> "[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).  "An officer who fails to intercede is liable for the preventable harm caused by

---

[8] Plaintiff only mentions the alleged dashboard search in passing in the factual portion of the FAC.  There he states, without further elaboration, that defendants further broke open the already-cracked dashboard "hoping to find contraband despite having no reason to suspect there was contraband inside".  FAC ¶ 30.

> the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official." *Id.* (internal citations omitted). However, "[i]n order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." *Id.*

*Richardson v. City of New York*, 15-CV-5775 (PKC), 2017 U.S. Dist. LEXIS 104625, at \*2-3 (S.D.N.Y. July 5, 2017). An assessment of whether an officer had a sufficient time to intervene is an issue for the jury unless the evidence shows a reasonable jury could not possibly conclude otherwise. See e.*g., Lehal v. United States*, 13-CV-3923 (DF), 2015 U.S. Dist. LEXIS 173610, at \*24 (S.D.N.Y. Dec. 29, 2015); *Scalpi v. Town of East Fishkill*, 14-CV-2126 (KMK), 2016 U.S. Dist. LEXIS 24521, at \*46 (S.D.N.Y. Feb. 26, 2016). "Courts may look to the length of the incident, *inter alia*, to determine whether an officer had a realistic opportunity to intervene." *Lehal*, 2015 U.S. Dist. LEXIS 173610, at \*24; *accord Scalpi*, 2016 U.S. Dist. LEXIS 24521, at \*47.

In the present case, Dicecco was neither present during the allegedly destructive search of the Galant nor even on the scene when the search occurred, which clearly precludes liability for him on a failure-to-intervene theory. *See, e.g., Marom v. City of New York*, 15-CV-2017 (PKC), 2016 U.S. Dist. LEXIS 28466, at \*66 (S.D.N.Y. Mar. 7, 2016). The undisputed evidence also shows that Golat was not present during the search. Rather, Golat was with Prince and plaintiff (who admitted he did not see the dashboard being damaged) near the trunk of the Galant while the interior of the vehicle was being searched by Officer Hesterhagen. *See* Defts' 56.1 ¶¶ 28-30. Accordingly, plaintiff's failure-to-intervene claim against Golat fails for this reason, as well. *See Waller v. City of Middletown*, 50 F. Supp. 3d 171, 184 (S.D.N.Y. 2014) (officers who remained in the hallway during a protective sweep that allegedly caused damage within an apartment did not have an opportunity to intervene).

15

Furthermore, a reasonable jury could not find that Golat had either the time to intervene or an awareness that a constitutional violation was occurring.  At most, Golat (like plaintiff) "just heard the plastic break" while the Galant was being searched.  Defts' 56.1 ¶ 30. This would not have afforded Golat with enough time to prevent any constitutional violation. *See, e.g., Sash v. United States*, 674 F. Supp. 2d 531, 545 (S.D.N.Y. 2009) (officer could not have interceded as a matter of law where the incident "took less than thirty seconds"); *Scalpi*, 2016 U.S. Dist. LEXIS 24521, at *47 (even assuming officer was standing close by, no realistic opportunity for him to intervene where the other twisted and forced plaintiff's arm to the side and quickly pushed her arm up); *Toliver v. City of New York*, 10-CV-5806 (SHS) (JCF), 2013 U.S. Dist. LEXIS 175670, at *13 (S.D.N.Y. Dec. 10, 2013) (no opportunity to intercede by nearby officer where two punches by assaulting officer "were sudden [and plaintiff] and provide[d] no evidence showing that there was enough time after the first blow to prevent the second"), *adopted by*, 2014 U.S. Dist. LEXIS 17227 (S.D.N.Y. Feb. 11, 2014).  Neither would it have been immediately apparent to a reasonable officer in Golat's position that the mere sound of plastic breaking within the Galant necessarily constituted a violation of plaintiff's constitutional rights.  *See McCormick v. Terwilliger*, 11-CV-6444 (FPG), 2015 U.S. Dist. LEXIS 129425, at *14 (W.D.N.Y. Sep. 25, 2015) (considering this factor in dismissing plaintiff's failure to intervene claim); *see also Reeder v. Holdridge*, 09-CV-575 (DNH) (CFH), 2012 U.S. Dist. LEXIS 148675, at *32-33 (N.D.N.Y. Sep. 5) (taking into account whether the officers had "a reasonable opportunity to identify a constitutional violation in which they could intervene"), *adopted by*, 2012 U.S. Dist. LEXIS 147762 (N.D.N.Y. Oct. 15, 2012); *Rodriguez v. City of New York*, 2012 U.S. Dist. LEXIS 66548 at 13-14 (S.D.N.Y. May 10, 2012) (noting that a failure to

intervene "requires both *awareness* that excessive force is being used and a realistic opportunity to intervene"; emphasis added).

At the very least, Golat is entitled to qualified immunity on this claim.  *See, e.g., Morris v. City of New York*, 14-CV-1749, 2015 U.S. Dist. LEXIS 54550 (E.D.N.Y. Apr. 27, 2015) (citing *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997):  "A police officer cannot be held liable for failure to intervene unless such a failure permitted fellow officers to 'violate a suspect's clearly established statutory or constitutional rights' and was under circumstances making it objectively unreasonable for him to believe that his fellow officers' conduct did not violate those rights.").

In sum, plaintiff's "failure to intervene" claim fails because it is insufficiently pleaded and it is not supported by the evidence.

### POINT IV

### PLAINTIFF'S *MONELL* CLAIM MUST BE DISMISSED

Plaintiff's municipal liability claim fails for three reasons:  (1) he is not claiming the City is responsible for any damage to the dashboard of his Galant; (2) even if he has made such a claim, it fails because he cannot establish an underlying constitutional violation by an individual defendant; and (3) even if he has made such a claim and he could establish an underlying constitutional violation, his insufficiently pleaded municipal liability claim is unsupported by any evidence in the record.

Plaintiff has failed to even claim *Monell* liability based on his only remaining constitutional violation – namely, the allegedly unreasonable and malicious damage to the dashboard of his Galant.  Rather, he claims the City is responsible for "the use of unjustified force in making arrests and/or the manufacture of false evidence against individuals in an

individual effort and also in conspiracy to justify the police's abuse of authority".  FAC ¶ 61.

Accordingly, plaintiff is not even asserting a Monell claim with respect to his damaged

dashboard.  *See Rogers v. New York City Police Dep't*, 12-CV-3042 (CBA) (MG), 2012 U.S.

Dist. LEXIS 147663, at *7 (E.D.N.Y. Oct. 12, 2012) (dismissing plaintiff's *Monell* claim as it

relates to his underlying excessive force claim because "plaintiff has not alleged that his arrest or

the officer's treatment of him resulted from a policy or custom attributable to the City").

Plaintiff's municipal liability claim also fails because plaintiff has not shown that

he has a viable claim that any individual defendant violated his constitutional rights.  *See, e.g.,*

*Schultz v. Village of Bellport*, 479 F. App'x 358, 360 (2d Cir. 2012); *Schweitzer v. Crofton*, 560

F. App'x 6, 10 (2d Cir. 2014); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).

Finally, plaintiff's municipal liability claim is entirely conclusory and

unsupported by anything in the record.  *See. e.g., Adams v. Orange County*, 13-CV-8549 (VB),

2015 U.S. Dist. LEXIS 126021, at *11-13 (S.D.N.Y. Sep. 1, 2015).  Not only did plaintiff never

demand any discovery with respect to a purported municipal liability claim for an unlawful

search, but neither party produced any documents or evidence of plaintiff's purported municipal

liability claim.  Plaintiff's recent letter to the Court does not even attempt to fashion a *Monell*

theory beyond what is insufficiently articulated in his FAC.  *See* Plaintiff's June 16, 2017 Letter

to the Court (Docket Entry 51) at 4.

Accordingly, plaintiff's municipal liability claim should be dismissed.

## POINT V

### PLAINTIFF SHOULD BE ORDERED TO PAY
### DEFENDANTS' FEES AND COSTS

Rule 11 of the Federal Rules of Civil Procedure is intended to deter frivolous

legal actions by imposing an affirmative legal obligation to conduct a reasonable investigation

into the factual and legal basis for claims before bringing a federal action.  *See* Fed. R. Civ. P. 11(b)(3); *see also Kropelnicki v. Siegel*, 290 F.3d 118, 131-132 (2d Cir. 2003).  Once a district court finds that Rule 11 has been violated, "it may in its discretion impose sanctions limited to what is sufficient to deter repetition of such conduct."  *Simon DeBartolo Group v. Richard E. Jacobs Group,* 186 F.3d 157, 166 (2d Cir. 1999) (citation omitted).

Here, not only did Defendants serve a Rule 11 Safe Harbor Letter on plaintiff and follow up requesting a legal basis for continuing this action, but the Court specifically directed plaintiff's counsel to speak with plaintiff about withdrawing this action.  For the reasons set forth *supra*, plaintiff's lawsuit is frivolous.  Despite not having a claim to attach the failure to intervene or *Monell* claims, plaintiff refused to withdraw them.  Despite not having a lawful basis to argue that the alleged damage to plaintiff's dashboard rose to the level of a constitutional violation, plaintiff has refused to withdraw this purported claim as well.

Defendants respectfully request that in the event the Court grants Defendants' motion for summary judgment, Defendants should be awarded reasonable costs and attorneys' fees in defending this action either as a sanction under Rule 11 or pursuant to 42 U.S.C. § 1988(b).  In a 42 U.S.C. § 1983 action, the court has discretion to award the prevailing parties reasonable costs and attorneys' fees.  *See* 42 U.S.C. § 1988(b) ("the court, in its discretion, may allow the prevailing party . . . a reasonable attorneys' fee as part of the costs.").  "When the prevailing party is the defendant, that language has been construed to require the defendant to show that the action was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so."  *Davidson v. Keenan*, 740 F.2d 129, 132-133 (2d Cir. 1984) (internal citations and quotation marks omitted).  The proper test for a fee award against plaintiff under 42 U.S.C. § 1988(b) is not whether plaintiff acted in subjective bad faith (although

19

plaintiff's subjective bad faith might provide an even stronger basis for awarding attorneys' fees) but whether the claim itself is objectively meritless.  *Id*. at 134.  Here, it is clear that this action has no merit, and has had none since its inception.   Accordingly, Defendants respectfully contend that reasonable costs and fees are appropriate.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant defendants' motion for summary judgment dismissing the First Amended Complaint in its entirety and awarding attorneys' fees and costs, together with such other and further relief as the Court deems just and proper pursuant to Rule 11(c) of the Federal Rules of Civil Procedure.

Dated:   New York, New York
             August 31, 2017

ZACHARY W. CARTER
Corporation Counsel of the
   City of New York
*Attorney for Defendants City, Hesterhagen, Golat, and Dicecco*
100 Church Street, Room 3-147
New York, New York 10007
(212) 356-2651

By:      */s/ Evan Brustein*

_____

Evan Brustein
*Senior Counsel*
Special Federal Litigation Division

To:      Ryan Lozar
             305 Broadway, 10th Floor
             New York, New York 11375
             (*via ECF*)

20