UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
NCHEWI AKPOKE,

                Plaintiff,                    MEMORANDUM AND ORDER
                                                    15-CV-6960

    - against -


CITY OF NEW YORK, NYPD OFFICER
ROBERT HESTERHAGEN, Shield No. 7727,
NYPD OFFICER DANIEL GOLAT, Shield No. 9913,
NYPD SERGEANT MICHAEL DICECCO,
Tax # 903799,

                Defendants.
------------------------------------------------------------x
GLASSER, Senior United States District Judge:

Plaintiff Nchewi Akpoke ("Akpoke" or "Plaintiff") brought 42 U.S.C. § 1983 and *Monell* claims against Defendants City of New York (the "City"), Robert Hesterhagen, Daniel Golat, and Michael Dicecco (collectively, "Defendants") alleging an unreasonable stop and search, excessive force, and failure to intervene in violation of his Fourth and Fourteenth Amendment rights. (ECF No. 15, "Compl."). He withdrew his unreasonable stop and excessive force claims. (ECF No. 60 at 1). Pending before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the remaining unreasonable search, failure to intervene, and *Monell* claims. (ECF No. 56). Oral argument was held on January 2, 2019. (ECF No. 70). For the reasons explained below, Defendants' motion is **GRANTED IN PART AND DENIED IN PART.**

## BACKGROUND

Many of the relevant facts below are disputed by the parties.

1

The individual Defendants are police officers employed by the NYPD and were on duty the night of July 26, 2015. (Compl. ¶ 8). Akpoke alleges that at approximately 10:52 p.m., he was driving with two of his friends when Defendants Hesterhagen and Golat flashed their lights, indicating that he should pull over. (Compl. ¶ 11-12). Defendants claim instead that Akpoke was double parked near an intersection. (ECF No. 61 at ¶ 17; Hesterhagen Depo. Tr. 18:20). After Hesterhagen approached the driver's side of Akpoke's vehicle, he shined a flashlight and saw a handle of a machete covered by a sheath, wedged in between the driver's seat and the middle console.[1] (ECF No. 61 at ¶ 18). Akpoke claims that he told Hesterhagen that he uses the machete for yard work, (ECF No. 61 at ¶¶ 18, 19), but Hesterhagen claims that Akpoke only stated "that's my machete." (ECF No. 59 at ¶¶ 18, 19). Akpoke claims that shortly after, Dicecco and another officer arrived on the scene, (Compl. ¶ 13-15), but Defendants claim that Dicecco did not arrive on the scene until after the arrest, the car was searched, and the weapons were recovered. (ECF No. 59 at ¶¶ 36, 37).

One of the officers arrested and handcuffed Akpoke at the back of his vehicle for possessing the machete. (Compl. ¶ 31; ECF No. 51 at ¶ 23; ECF No. 61 at ¶ 23). Akpoke claims that after the arrest, the other three officers searched his vehicle and found a bludgeon and a gravity knife, causing damage to the dashboard in the process.[2] (Compl. ¶ 15-17, 30; ECF No. 61 at ¶¶ 24, 27). Akpoke was charged with criminal possession of a weapon in the fourth degree but pled guilty to a lesser charge of disorderly conduct. (ECF No. 61 at ¶¶ 39, 41).

---

[1] The Amended Complaint claims that Hesterhagen saw a "machete-like tool lying on the floor of the vehicle." (Compl. ¶ 20). This is contradicted by both the Rule 56.1 Statements and Hesterhagen's deposition testimony, which indicate that the machete was wedged in between the seat and the console.

[2] At oral argument, Akpoke claimed that there were two searches. The record is completely devoid of a second search.

## LEGAL STANDARD

Summary judgment is appropriate when there are "no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). A genuine issue of material fact exists if a reasonable jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden to demonstrate the absence of a genuine issue of material fact, and the Court must draw all reasonable inferences in favor of the non-moving party. *Id.* at 255.

If the summary judgment movant satisfies its initial burden of production, the burden of proof shifts to the non-movant who must demonstrate that a genuine issue of fact does exist. *Id.* at 250. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586. Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admission on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Once the nonmovant has met that requirement, its "allegations [will be] taken as true, and [it] will receive the benefit of the doubt when [its] assertions conflict with those of the movant." *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996).

The Court's role in a motion for summary judgment is one of "issue-finding," not "issue-resolution." *Ramirez v. New York City Bd. of Educ.*, 481 F. Supp. 2d 209, 216 (E.D.N.Y. 2007). Therefore, the Court's charge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

### I. Plaintiff's Rule 56.1 Statement of Undisputed Material Facts

As a threshold matter, Defendants claim that the supplemental paragraphs in Akpoke's Rule 56.1 statement should be stricken because they "do not contain *short* and *concise* statements of *material* facts, in the form of a counter-statement." (ECF No. 67 at 3) (emphasis in original). The Court disagrees. "Motions to strike are held to a high standard, as they are generally disfavored." *Trustees of Local 8A-28A Welfare Fund v. Am. Grp. Administrators*, No. 14-CV-1088 (PK), 2017 WL 3700899, at *1 (E.D.N.Y. Aug. 25, 2017). However, "[s]tatements in an affidavit or Rule 56.1 statement are inappropriate [and should be stricken] if they are not based on personal knowledge, contain inadmissible hearsay, are conclusory or argumentative or do not cite to supporting evidence." *Ross Univ. Sch. of Med., Ltd. v. Brooklyn-Queens Health Care, Inc.*, No. 09-CV-1410 (KAM), 2012 WL 6091570, at *6 (E.D.N.Y. Dec. 7, 2012), *report and recommendation adopted in part*, No. 09-CV-1410 (KAM) (RLM), 2013 WL 1334271 (E.D.N.Y. Mar. 28, 2013). That is not the case here. Defendants' disagreement with the length, materiality, and support of Akpoke's Rule 56.1 statements do not deem them inappropriate. In addition, the Court may take judicial notice of the docket reports and complaints pertaining to other lawsuits filed against the City of New York. *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (citing Fed. R. Evid. 201(b)).

### II. Plaintiff's Section 1983 Claim

Akpoke alleges the following in his Section 1983 cause of action:

Mr. Akpoke repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

Defendants, by their conduct toward Mr. Akpoke alleged herein, violated Mr. Akpoke's rights guaranteed by 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the Constitution of the United States.

> Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly with malice and with the specific intent to deprive Mr. Akpoke of his constitutional rights.
>
> As a direct and proximate result of Defendants' unlawful conduct, Mr. Akpoke sustained the damages hereinbefore alleged.

(Compl. ¶¶ 42-45). Defendants argue that this claim should be dismissed because Akpoke failed "to identify which constitutional rights guaranteed by the Fourth and Fourteenth Amendments were allegedly violated or specify the factual basis for [this] claim . . . ." (ECF No. 58 at 5). The Court agrees. Akpoke failed to give Defendants notice of any harm he suffered separate and apart from his more specific claims for an unconstitutional search and the failure to intervene. *Folk v. City of New York,* 243 F. Supp. 3d 363, 371 (E.D.N.Y. 2017); *see also Crown Heights Shomrim Volunteer Safety Patrol, Inc. v. City of New York*, No. 11-CV-329 (KAM), 2014 WL 4804869, at *5 n. 3 (E.D.N.Y. Sept. 25, 2014) (dismissing plaintiff's Section 1983 claim because "[g]eneral allegations in the Complaint, without supporting facts other than a clause incorporating an entire complaint by reference, are insufficient to withstand even a motion to dismiss because they do not give fair notice of what the claim is and the grounds upon which it rests."). Accordingly, Akpoke's Section 1983 claim is dismissed.

### III. Plaintiff's Unreasonable Search Claim

Warrantless searches are "*per se* unreasonable" under the Fourth Amendment subject to a few exceptions, including a search incident to a lawful arrest. *Arizona v. Gant*, 556 U.S. 332 (2009). That exception applies if the arrest is lawful and if the space to be searched is within an arrestee's "immediate control," meaning "the area within which he might gain possession of a weapon or destructible evidence," or when it is "reasonable to believe evidence relevant to the crime of arrest might be found." *Id.* at 335, 343. Therefore, a vehicle search incident to a lawful

5

arrest is unlawful if it was done "after the arrestee has been secured and cannot access the interior of the vehicle" or there was no "likelihood of discovering offense-related evidence" in the vehicle. *Id.*

There are genuine issues of fact precluding summary judgment of Akpoke's unreasonable search claim, including whether Akpoke's arrest for possession of the machete was lawful.[3] Section 265.01(2) of the Penal Code provides that a person is guilty of criminal possession of a machete in the fourth degree if he possessed it "with intent to use [it] unlawfully against another." Defendants do not claim that they reasonably believed Akpoke intended to use the machete unlawfully against another, but claim quite the opposite—that the machete was "wedged between the seat and the console," covered by a sheath, and that Akpoke was calm, non-violent, and never made any physically-threatening movements. (Hesterhagen Depo. Tr. at 43:6-16, 47:4-5; Golat Depo. Tr. at 22:11-12). Further, there is an issue of fact as to whether Akpoke told Defendants that he used the machete for yard work.

Defendants argue that because Akpoke pled guilty to disorderly conduct, the unlawful arrest was transformed into a lawful one. That argument is without merit. Akpoke pled guilty to disorderly conduct to settle the misdemeanor charge that he was in possession of the bludgeon and the gravity knife, which are *per se* violations. He was not ultimately charged for possession of the machete, which was the basis for his arrest. (*See* Exhibit 17). Defendants also argue that the search satisfies the automobile exception to the Fourth Amendment, which applies "if a car is readily mobile and probable cause exists to believe it contains contraband." *Maryland v. Dyson*,

---

[3] At oral argument, Akpoke suggested that his unreasonable search claim is based on the resulting damage to his vehicle's dashboard. To the extent that is the case, his unreasonable search claim is meritless, given that his dashboard was damaged prior to the search and he has since donated his vehicle to Cars for Kids. (ECF No. 61 at ¶ 35) ("Plaintiff has no intention of repairing the dashboard because he donated the vehicle to Cards for Kids . . . .").

527 U.S. 465, 467 (1999). There is a genuine issue of fact whether it was reasonable for Defendants to believe the vehicle contained other contraband after they were told that the machete was used for yard work. *United States v. Robles*, 253 F. Supp. 2d 544, 551 (S.D.N.Y. 2002) (rejecting the application of the automobile exception because "the government has offered no evidence, other than the knife (which itself was illegally seized), to demonstrate probable cause to believe that there was any criminal activity afoot."). For the same reasons, there is a genuine issue of fact whether there was a likelihood of discovering any other offense-related evidence in the vehicle, which would satisfy the search incident to a lawful arrest exception. Accordingly, Defendants' motion for summary judgment of Akpoke's Fourth Amendment unreasonable search claim is denied.

IV. **Plaintiff's Failure to Intervene Claim**

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014). "An officer who fails to intercede in a constitutional violation is liable for the preventable harm caused by the actions of other officers." *Id.* Whether the officer had a "realistic opportunity" to intervene is normally a question for the jury, unless, "considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Id.* at 244.

Akpoke alleges that the officers who were present "failed to intervene to prevent the unconstitutional stop of [his] vehicle . . . failed to intervene to prevent the unconstitutional use of force against [him] . . . and failed to intervene to correct Defendant Hesterhagen's subsequent fabrication of evidence on the government paperwork documenting the incident." (Compl. ¶¶ 15-17). His Memorandum of Law indicates that his failure to intervene claim may be based solely on

7

the unlawful search, and he confirmed that is the case at oral argument. (ECF No. 60 at 1, 14). While Akpoke claims that Dicecco and the fourth officer arrived on the scene before the search, Defendants claim that Dicecco did not arrive until after the search, so he did not have an opportunity to intervene. The need for Dicecco's presence at the scene after the arrest and search is questionable, but nevertheless, this is a material fact to be resolved at trial. Accordingly, Defendants' motion for summary judgment of Akpoke's failure to intervene claim is denied.

V.   **Plaintiff's *Monell* Claim**

Akpoke also asserts a *Monell* claim against the City, which arises from the Supreme Court case *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which held that local governments cannot be held liable under a theory of *respondeat superior* but can be held liable when a constitutional violation is caused by governmental action. To succeed on such a claim, a plaintiff must establish three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Martin v. City of New York*, 627 F. Supp. 892, 895 (E.D.N.Y. 1985) (citing *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983). A custom or policy may be established through policy statements, ordinances, regulations, or decisions "officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690.

Although "official policy" often refers to formal rules or customs that intentionally establish "fixed plans of action" over a period of time, when a municipality "chooses a course of action tailored to a specific situation," this may also "represent an act of official government policy as that term is commonly understood." *Montero v. City of Yonkers, New York*, 890 F.3d 386, 403 (2d Cir. 2018). Such policies need not be authorized or ratified by multiple decisionmakers of the municipality; "even a single action by a decisionmaker who possesses final authority to establish municipal liability with respect to the action ordered may deprive the plaintiff his or her

8

constitutional rights." *Id.* However, when a non-decisionmaker committed the constitutional violation, "the plaintiff must show that the decisionmaker ordered or ratified such a subordinate's conduct or was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions." *Id.*

"Where senior personnel have knowledge of a pattern of constitutionally offensive acts by their subordinates but fail to take remedial steps, the municipality may be held liable for a subsequent violation if the superior's inaction amounts to deliberate indifference or to tacit authorization of the offensive acts." *Turpin v. Mailet*, 619 F.2d 196, 201 (2d Cir. 1980). A finding of "deliberate indifference" depends on the careful assessment of the facts and whether those facts demonstrate that the policymaker's inaction was the result of "conscious choice" and not just "mere negligence." *Cash v. Cty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011). Thus, deliberate indifference may be inferred where "the need for more or better supervision to protect against constitutional violations was obvious, but the policymaker failed to make meaningful efforts to address the risk of harm to plaintiffs." *Id.* (internal citations omitted).

Akpoke alleges that his constitutional rights were violated "as a direct result of the unconstitutional policies, customs, or practices of the City, including, without limitation, the inadequate screening, hiring, retaining, training and supervising of its employees." (Compl. ¶ 32). He bases his claim on four previously-filed lawsuits and five complaints to the Civilian Complaint Review Board ("CCRB") and argues that the City had notice and was deliberately indifferent to those lawsuits and complaints, which caused his injuries here. (Compl. ¶¶ 86-89; ECF No. 60 at 16). The City argues (1) that the conduct giving rise to those lawsuits and complaints was not sufficiently similar to Defendants' conduct here to place the City on notice of any training

9

deficiency regarding an unlawful search of a vehicle and (2) the Defendant with five allegations against him received additional training on Fourth Amendment principles. (ECF No. 67 at 11).

Akpoke failed to show that the City had notice that Defendants were likely to commit an unlawful search of his vehicle and made a "conscious choice" not to take remedial steps. While "a given officer's disciplinary history may be probative of whether it was foreseeable to the municipality that the officer would engage in misconduct yet again," where, as here, "there is no evidence as to the facts underlying the claims or how thoroughly they were investigated by the City," the Court cannot find that the City was deliberately indifferent. *Outlaw v. City of Hartford*, 884 F.3d 351, 379-80 (2d Cir. 2018) (holding that 66 lawsuits and 87 other claims against the city's police officers was not enough to establish deliberate indifference to the use of excessive force). In any event, as the City notes, some of the lawsuits and CCRB complaints cited by Akpoke did not involve unlawful searches and those that did were either unsubstantiated or resulted in exoneration. (ECF No. 67 at 11). Therefore, the need for more or better supervision to protect against the alleged constitutional violation here was not "obvious." Accordingly, Defendants' motion for summary judgment as to Akpoke's *Monell* claim is granted.

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment of Plaintiff's Section 1983 and *Monell* claims is GRANTED and their motion for summary judgment of Plaintiff's unreasonable search and failure to intervene claims is DENIED. Having denied Defendants' motion in part, Rule 11 sanctions are not warranted.

SO ORDERED.

Dated: Brooklyn, New York
February 6, 2019

/s/
I. Leo Glasser        U.S.D.J.